KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KERMIT PEREDA-REBOLLO (1),<br>DANIEL PRECIADO (2),<br><br>Defendant. | Criminal Case No. 08CR1456-LAB<br><br>DATE: September 8, 2008<br>TIME: 2:00 p.m.<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' *IN LIMINE* MOTIONS TO:**<br><br>**1) EXCLUDE STATEMENTS BY CO-DEFENDANT;**<br>**2) EXCLUDE DEMEANOR EVIDENCE;**<br>**3) EXCLUDE EXPERT TESTIMONY;**<br>**4) PREVENT A COPY OF THE INDICTMENT FROM BEING SUBMITTED DURING DELIBERATIONS;**<br>**5) DISCLOSE GRAND JURY TRANSCRIPTS;**<br>**6) PROVIDE A SEPARATE COPY OF THE JURY INSTRUCTIONS FOR EACH JUROR DURING DELIBERATIONS;**<br>**7) ALLOW ATTORNEY-CONDUCTED VOIR DIRE; AND**<br>**8) PRECLUDE 404(B) AND 609 EVIDENCE**<br><br>**TOGETHER WITH THE UNITED STATES' MOTIONS IN LIMINE TO:**<br><br>**A) PRECLUDE DEFENDANT FROM MAKING REFERENCE TO FAMILY, HEALTH, AGE, FINANCES, EDUCATION OR POTENTIAL PUNISHMENT; AND** |

) **B) PRECLUDE DEFENDANT FROM INTRODUCING HIS OWN OUT-OF-COURT STATEMENTS**
)
) **TOGETHER WITH THE STATEMENT OF FACTS, AND MEMORANDUM OF POINTS AND AUTHORITIES**
)

COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its response and opposition to defendants' above-referenced motions in limine.

**I.**

**STATEMENT OF THE CASE**

On May 7, 2008, a federal grand jury in the Southern District of California returned a three-count Indictment against defendants KERMIT PEREDA-REBOLLO ("Pereda") and DANIEL PRECIADO ("Preciado") with transportation of illegal aliens and aiding and abetting, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(II). On May 8, 2008, the defendants were arraigned on the Indictment and entered pleas of not guilty.

On August 27, 2008, Preciado filed his motions in limine to exclude all expert testimony pursuant to Rule 16 and 404(b) or 609. On August 29, 2008, Pereda filed his motions in limine to exclude statement(s) by the co-defendant; exclude demeanor or silence evidence; exclude expert testimony pursuant to Rule 16; prohibit a copy of the indictment from being submitted during deliberations; disclose grand jury transcripts; provide a separate copy of the jury instructions for each juror during deliberations; and to allow attorney conducted voir dire.

**II.**

**STATEMENT OF FACTS**

**A. Incident**

On Sunday, April 13, 2008, at approximately 11:00 a.m., Border Patrol Agents Santos, Damian, and Senior Patrol Agent Salzano were conducting Border Patrol Operations at the U.S. Border Patrol Checkpoint located on Interstate 8 near Pine Valley, California. The checkpoint was closed due to high winds. At about 12:00 p.m., the agents received a citizen's report of a dump truck that had loaded

several suspected illegal aliens near Tierra Del Sol in Boulevard, California. The agents quickly located a vehicle matching the description heading west bound on I-8 near Kitchen Creek Road. Agent Santos performed a vehicle stop of a Freightliner, FL 70 - Dump Truck, bearing California License plate 6G20810 near the I-8 Border Patrol Checkpoint near Pine Valley, California. Agents Salzano and Santos approached the vehicle and identified themselves as border patrol agents to the driver and passenger, later identified as Pereda and Preciado, respectively. For officer safety, the agents had the Defendants get out of the vehicle. Agent Salzano asked the two men their citizenship and place of birth. Pereda stated that he was born in Mexico City, Mexico, and that he did not have any immigration documents that would allow him to enter or remain in the United States legally. **Preciado stated that he was a United States citizen, but claimed to have left his documents at home**. After further questioning, Preciado claimed that he was a resident alien from Mexico, but that he did not have his green card with him at the time.

Agent Salzano asked Preciado if there was anything in the vehicle that was illegal. Neither Preciado nor Pereda responded. Agent Salzano informed them that a canine search for drugs would be performed on the vehicle.

**B. <u>Canine Search</u>**

Agent Salzano and his Narcotics Detector Dog (NDD) "Bartel" conducted a search of the vehicle. "Bartel" is trained and certified in the detection of methamphetamine, heroin, cocaine, marijuana, and concealed humans. "Bartel" alerted on the passenger side of the vehicle and followed the odor to the gate of the dump truck in the back of the truck. Agents Salzano and Damian climbed on the truck and observed 12 suspected illegal aliens lying on the bottom of the dump area. The agents identified themselves as United States Border Patrol Agents. All of the suspected illegal aliens admitted to being undocumented Mexican citizens illegally present in the United States.

At 12:08 p.m., the defendants and the 12 undocumented individuals were arrested and transported to the Campo Border Patrol Station processing unit.

**C. <u>Criminal and Immigration History</u>**

Once at the station, the defendants were searched for officer safety by Agent Damian. In Preciado's pocket, Agent Damian found a Motorola cell phone and a hand written note containing

directions to the location where the citizen's report had first seen the truck.

A subsequent criminal and immigration records check revealed that Pereda did not have a criminal record, but had been previously removed from the United States on March 3, 2006. The records check revealed that Preciado has a misdemeanor weapons offense from 2005 under Cal. PC 12020(a) manufacture/possess a dangerous weapon. He received 3 years probation and a $900 fine. Preciado does not have any prior immigration offenses.

**D. Post Miranda Statements**

Pereda and Preciado were both read their Miranda rights and agreed to answer questions without a lawyer being present. Pereda made the following videotaped sworn statement:

> He is a Mexican citizen born in Mexico City, Mexico on January 1, 1982. He was approached by a man who asked him to drive a rental truck and pick up illegal aliens, and he agreed. The unidentified man told him that he would be paid an unknown sum of money for picking up the illegal aliens. He was given written instructions by the unknown man to the area where he would be picking up the illegal aliens. He drove to the area and saw the illegal aliens standing next to the passenger, co-defendant Preciado, who yelled to the group to get in the back of the truck. He knew the people he picked up were illegal aliens, and he was going to take them to San Diego and then call the unidentifed man to await further instructions.

Preciado made the following videotaped sworn statement:

> He is a Mexican citizen who was born in El Chante, Jalisco, Mexico on December 12, 1984. He attended San Pasqual High School in Escondido, California through the 10th grade and finished high school at Camp Barrett while he was in jail. His co-defendant was given the keys to the truck by an unidentified man who told them he wanted them to do a job. He (Preciado) did not know exactly what the job was, but that "it was probably to go pick up some wood." The unidentified man told him that he would be paid an unknown sum of money for doing the job. He was to be paid after they dropped the truck off with its contents. That he was given written instructions by the unknown man to the area to do the job. The cell phone found inside the truck was there when they got inside the truck and was to be used by the unknown man to contact them. They drove to the area where they were instructed to go and saw a man laying down on the road. When they stopped the truck, people began jumping into the back of the truck. He knew the people were illegal aliens but was afraid to tell them to get off the truck. That he was going to Escondido and was supposed to call the unknown man upon arrival.

**E. Material Witnesses' Statements**

Rosendo Guillen-Villa ("Guillen-Villa") was one of 12 illegal aliens found in the back of the dump truck. Guillen-Villa made the following videotaped statement:

> He is a citizen and national of Mexico born in Michoacan, Mexico. Both his parents are citizens and nationals of Mexico. He does not have nor has he ever had any immigration documents entitling him to be or remain in the United States legally. His brother had made arrangements with the smuggler to smuggle him to Las Vegas, Nevada for an unknown sum of money. He and the other aliens climbed the fence at night and walked a trail until the foot guide told them to stop. They waited in the brush for approximately two hours until the foot guide told them to get

> up and follow him. Once they arrived near the road, he saw the truck parked alongside the road. The foot guide told them to get into the back of the truck. Once they were loaded into the truck, the truck took off and did not stop until Border Patrol stopped them. He never communicated with the people driving the truck.

Enrique Lopez-Orozco ("Lopez-Orozco") was one of 12 illegal aliens found in the back of the dump truck. Lopez-Orozco made the following videotaped statement:

> He is a citizen and national of Mexico born in Jalisco, Mexico. Both his parents are citizens and nationals of Mexico. He does not have nor has he ever had any immigration documents entitling him to be or remain in the United States legally. He made arrangements with a smuggler that his friend recommended. He was to be smuggled to Los Angeles, California for $3,200.00 He and the other aliens climbed the fence at night and walked a trail until the foot guides told them to stop. They waited in the brush for approximately two hours until the foot guides told them to get up and follow him. Once they arrived near the road, he saw the truck parked alongside the road. The foot guides told them to get into the back of the truck. Once they were loaded into the truck, the truck took off and did not stop until Border Patrol stopped them. He never communicated with the people driving the truck.

Juan Vera-Najera ("Vera-Najera") was one of 12 illegal aliens found in the back of the dump truck. Vera-Najera made the following videotaped statement:

> He is a citizen and national of Mexico born in Jalisco, Mexico. Both his parents are citizens and nationals of Mexico. He does not have nor has he ever had any immigration documents entitling him to be or remain in the United States legally. His relatives made arrangements with the smuggler to smuggle him to California for an unknown sum of money that his relatives would pay. He and the other aliens climbed the fence at night and walked a trail until the foot guides told them to stop. They waited in the brush for approximately two hours until the foot guides told them to get up and follow him. Once they arrived near the road, he saw the truck parked alongside the road. The foot guides told them to get into the back of the truck. Once they were loaded into the truck, the truck took off and did not stop until Border Patrol stopped them. He never communicated with the people driving the truck.

The other nine undocumented aliens were granted voluntary returns to Mexico.

## III.

## THE UNITED STATES' RESPONSE AND <u>OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE</u>

### A. <u>Exclude Statement By Co-Defendant or Sever Defendants</u>

Pereda argues that the admission of co-defendant Preciado's statements would violate his (Pereda's) Sixth Amendment right to confront and cross-examine the witnesses against him. Pereda asks this Court to suppress Preciado's statements or sever the defendants' trial to protect his (Pereda's) constitutional rights. His motion should be denied.

Inculpatory hearsay statements of a codefendant are still governed by the oft- invoked rule of Bruton v. United States, 391 U.S. 123 (1968) and its progeny. "Under Bruton and its progeny, the admission of a statement made by a nontestifying codefendant violates the Confrontation Clause when that statement facially, expressly, clearly, or powerfully implicates the defendant." United States v. Angwin, 271 F.3d 786, 796 (9th Cir. 2001).

Pereda also invokes the rule of Crawford v. Washington, 541 U.S. 36, 68-69 (2004) that admission of testimonial hearsay against the accused violates the Confrontation Clause where the accused has no opportunity to cross-examine the declarant. There is no separate Crawford problem, however. United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004). Bruton and its progeny and Crawford all require the same things: The jury must be instructed that a nontestifying codefendant's statements may only be used against the codefendant and the statements cannot be so powerfully inculpating that there is substantial risk the jury would ignore the instruction. United States v. Vega-Molina, 407 F.3d 511, 519 (1st Cir. 2005); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) (holding that "[t]he Confrontation Clause is not violated by a nontestifying codefendant's confession with a proper limiting instruction" when the confession is redacted to eliminate any reference to the defendant's name or existence); Lung Fong Chen, 393 F.3d at 150 (the same attenuation of the codefendant's statements from the defendant's guilt that prevents Bruton error also prevents Crawford error).

A statement is not facially inculpatory just because it identifies the defendant. Id. To be incriminatory on its face, the statement must have a sufficiently "devastating" or "powerful" inculpatory impact. Id. (internal quotation marks omitted). "[M]ildly incriminating" statements do not run afoul of the Sixth Amendment rule. Id.

The Ninth Circuit's decision in Angwin is illustrative. The defendant, Angwin, was caught transporting illegal aliens and claimed at trial that two men at the roadside had approached him while he was walking his dog and then yelled for fourteen aliens to jump into his motorhome. Id. at 793. This Court held that admission of a codefendant's hearsay testimony that Angwin had talked at the roadside with one man, then ordered her to sit in the passenger seat and not say anything did not affront the Sixth Amendment - even where the codefendant's attorney relied on the statement to argue that Angwin had

duped the codefendant into the crime. Id. at 793-94, 796-97. The Ninth Circuit reasoned that the evidence was susceptible to varying interpretations and was not facially or powerfully incriminating. Id. at 796-98.

//

Here, Preciado's statements about what happened on the date in question is clearly not facially or powerfully incriminating.

**B. Exclude Demeanor and Silence Evidence**

Pereda's motion to exclude testimony about his post-arrest demeanor (lack of physical or emotional response), when confronted with the fact that 12 illegal aliens were found in his vehicle, violated his Fifth Amendment privilege against self-incrimination or should be excluded under Rule 403, 701 and 703 should be denied.

In United States v. Velarde-Gomez, 269 F.3d 1023 (9th Cir. 2001) (en banc), the Ninth Circuit disallowed evidence of a suspect's lack of reaction to being accused of smuggling drugs, post-arrest, on the basis that the evidence violated his right to remain silent. Id. at 1031. The holding was grounded in the fact that, in discussing the defendant's reaction, the prosecutor twice asked a Customs agent if the defendant said anything; did not narrow his queries to ask only about physical reaction, but inquired broadly as to any "response;" never used the word "physical;" and elicited testimony that defendant "just sat there," which could have meant he said nothing. Id. at 1031. Notwithstanding this result, Velarde-Gomez did not announce a per se bar of demeanor evidence. Instead, the Ninth Circuit expressly "agree[d] that the government may offer evidence of demeanor," id. at 1030, and said it did "not quarrel with the notion that the prosecutor could have asked about Velarde's non-testimonial physical response." Id. at 1031 (emphasis added).

This deliberate effort by Velarde-Gomez to keep the door open to demeanor evidence in the right circumstances is very important as it is consistent with well-settled principles distinguishing testimonial from physical evidence. The privilege against self- incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide . . . evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761 (1966). It "does not protect a suspect from being compelled . . . to produce 'real or physical evidence.' " Pennsylvania v. Muniz, 496

U.S. 582, 589 (1990) (citation omitted). Thus, evidence of fingerprints, handwriting, vocal characteristics, stride, gestures, or blood characteristics have been found not to violate the Fifth Amendment. Schmerber, 384 U.S. at 764. Physical demeanor should be no different, especially where evidence relates to reflexive facial movements.

Accordingly, Pereda's motion to exclude testimony about his nervousness, body language or silence "in the face of questions or comments" should be denied.

**C. Exclude Expert Testimony**

The United States does not intend to call any expert witnesses in its case-in-chief.

**D. Prevent a Copy of the Indictment from Being Submitted During Deliberations**

The Government submits to the Court's general practice as to this request.

**E. Disclose Grand Jury Transcripts**

The Government does not intend to call anyone to testify at trial who testified before the Grand Jury in this case. If the Government does decide to call a witness who testified before the Grand Jury, it will produce any transcripts.

**F. Provide a Separate Copy of the Jury Instructions for Each Juror During Deliberations**

The Government does not believe it is necessary to provide a copy of the jury instructions to each juror, but submits to the Court's general practice as to this request.

**G. Allow Attorney-Conducted Voir Dire**

The Government has no objection to attorney-conducted voir-dire, provided the United States is provided with the same amount of time provided to Defendant.

**H. Preclude 404(b) and 609 Evidence**

The United States does not seek to offer any 404 (b) evidence of the Defendant in its case-in-chief. Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of

> a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed. R. Evid. 609(a) (emphasis added).

The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760 (9th Cir. 1987). Specifically, the court must consider: 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness' subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the defendant's testimony; and 5) the centrality of the defendant's credibility. Id. at 762-763.

The Ninth Circuit applied these factors in United States v. Perkins, and concluded that "the admission under Rule 609 of a bank robbery conviction in a bank robbery trial is not an abuse of discretion when the conviction serves a proper impeachment purpose, such as when the defendant's testimony and credibility are central to the case." 937 F.2d 1397, 1406 (9th Cir. 1990). See also, Browne, 829 F.2d at 764 (holding that the district court did not abuse its discretion in admitting impeachment evidence of defendant's prior conviction for bank robbery during a bank robbery trial); United States v. Charmley, 764 F.2d 675, 677 (9th Cir. 1985) (upholding trial court's admission of prior convictions for both bank robbery and forgery in bank robbery trial); United States v. Oaxaca, 569 F.2d 518, 527 (9th Cir. 1978) (allowing impeachment with evidence of prior burglary and bank robbery).

In this case, it is anticipated that Defendant Preciado will dispute at least one of the elements. Thus, his credibility is squarely at issue. If Preciado chooses to testify at trial, the United States should not be prevented from demonstrating Defendant's lack of trustworthiness and credibility by utilizing his false claim to U.S. citizenship and prior misdemeanor weapons offense.

Based on the foregoing reasons, evidence of defendant's prior bad act should be admitted in the government's case-in-chief. However, even if the United States does not introduce evidence of any prior bad acts by the defendant in it's case in chief, it should be allowed the opportunity to cross-examine the defendant about any evidence that concerns her character for untruthfulness. Rule 608(b) provides: "Specific instances of conduct by a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by

extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . ." Fed. R. Evid. 608(b).

Clearly, the false statements to the border patrol agents and his prior misdemeanor weapons offense goes toward Preciado's character for untruthfulness.

**IV**

**THE UNITED STATES' MOTIONS IN LIMINE**

**A. The Court Should Prohibit Defendant from Making Reference to Defendant's Family, Health, Age, Finances, Education and Potential Punishment**

Evidence of, and thus argument referring to, Defendant's family, health, age, finances, education and potential punishment is inadmissible and improper.

Fed. R. of Evid. 402 provides that evidence "which is not relevant is not admissible." Fed. R. Evid. 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition). Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Reference to Defendant's family, health, age, finances, education and potential punishment may be relevant at sentencing. However, in an illegal reentry trial, such reference is not only irrelevant and unfairly prejudicial but a blatant play for sympathy and jury nullification as well

**B. Preciado Should Be Prohibited from Introducing His Own Out-of-Court Statements**

A Defendant should be prohibited from introducing his own out-of-court hearsay statements. Defendants may not elicit his own oral statements through examination of other witnesses. Such statements are inadmissible hearsay, (United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (a defendant's "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, . . . but the non-self-inculpatory statements are inadmissible hearsay.")), to which the rule of completeness does not apply (id.) and even if it did apply, would not

render admissible. United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) ("Because [defendant's] out-of-court statements to [the government agent] do not fall within an exception to the hearsay rule, they are inadmissible, regardless of [the rule of completeness]."); United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir.1996) (rule of completeness does "not render admissible the evidence which otherwise is inadmissible under hearsay rules"). Enforcing this limitation on a defendant's ability to examine witnesses does not violate the Confrontation Clause. Ortega, 203 F.3d at 682.

## V

## CONCLUSION

Based on the foregoing, defendants' motions in limine should be denied.

DATED: September 4, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/ Randy K. Jones

_______________________________

RANDY K. JONES
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: randy.jones2@usdoj.gov

KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE LARRY A. BURNS)

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. KERMIT PEREDA-REBOLLO (1), DANIEL PRECIADO (2), Defendants.. | Case No. 08CR1456-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendants' Motions in Limine on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. **Elizabeth Barros (elizabeth_barros@fd.org)**
2. **Thomas P. Mattews (tmatthews@libertylawyers.com)**
3. **Erika M. Nicolalde (Enicolalde@lbertylawyers.com)**
4. **Tamara D. DeHaan (dehaanesq@cox.net)**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2008

s/ Randy K. Jones
RANDY K. JONES